*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA TRUSTEE, LLC and STEPHEN ROUTH, | ) ) ) | Supreme Court No. S-14915 |
| Appellant, | ) ) | Superior Court No. 3AN-10-06356 CI |
| v. | ) ) | O P I N I O N |
| BRETT AMBRIDGE and JOSEPHINE AMBRIDGE, | ) ) ) | No. 7084 - March 4, 2016 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Richard Ullstrom, RCO Legal-Alaska, Inc., Anchorage, for Appellants. James J. Davis, Jr. and Daniel C. Coons, Alaska Legal Services Corporation, Anchorage, and Deepak Gupta and Jonathan E. Taylor, Gupta Beck PLLC, Washington, D.C., for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.
WINFREE, Justice, with whom STOWERS, Justice, joins, dissenting.

## I. INTRODUCTION

Brett and Josephine Ambridge defaulted on their home loan. Alaska Trustee, LLC, in the business of pursuing nonjudicial foreclosures, sent the Ambridges

a notice of default that failed to state the full amount due as required by the federal Fair Debt Collection Practices Act (FDCPA). The Ambridges filed suit against Alaska Trustee and its owner, Stephen Routh, seeking damages under the FDCPA and the Alaska Unfair Trade Practices and Consumer Protection Act (UTPA), as well as injunctive and declaratory relief. The superior court held that both Alaska Trustee and Routh were "debt collectors" subject to liability under the FDCPA, awarded damages under that Act, and awarded injunctive relief under the UTPA. Alaska Trustee and Routh appeal, arguing that neither of them is a debt collector as defined by federal law and that injunctive relief was improperly awarded.

We conclude that the superior court's decision that Alaska Trustee was a debt collector and liable for the violation of the FDCPA accords with the more persuasive authority, and we therefore affirm it. But while we agree with the superior court's decision that Routh was a debt collector as well, we conclude that the evidence did not support finding him liable for the violation, and we reverse the superior court's decision on this issue. Finally, we affirm the superior court's award of injunctive relief under the UTPA.

## II.    FACTS AND PROCEEDINGS

### A.    Alaska Trustee's Notices Of Default To The Ambridges

The Ambridges bought their first home in 2006. They took out a home loan from Alaska Housing Finance Corporation, secured by a deed of trust against the property; the loan was serviced by Wells Fargo Bank, N.A. The Ambridges fell behind on their payments in late 2007 and received a letter from Alaska Trustee, LLC, notifying them that they were in default and that a foreclosure sale would take place in January 2008.

The Ambridges were able to cure the default.  But they fell behind again and received another notice of default from Alaska Trustee in August 2009.[1]  This time they were unable to cure the default, and their property was sold at auction in December 2009.

The 2009 notices of default are at the center of this appeal.  The first one described the deed of trust and the property, and it stated that "[t]he amount of the obligation secured is $196,712.28, plus interest, late charges, costs and any future advances."  It also had a statement at the top that read:  "The purpose of this letter is to collect a debt.  Any information obtained will be used for that purpose."  At the bottom, the notice had a lengthy paragraph entitled "Fair Debt Collection Practices Act Statement."[2]

The amended notice, sent later, contained the same provisions and attached

---

[1]  As before, the Ambridges first received a letter from Wells Fargo in April 2009 informing them of the default, stating the total delinquency, and offering them another chance to reinstate the loan.

[2]  The statement provided information required by 15 U.S.C. § 1692g(a) (2012).  It read:

> The principal balance of the debt is $196,712.28, plus interest, late charges, attorney fees and costs and other advances.  The creditor to whom the debt is owed is Alaska Housing Finance Corporation.  Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid.  If you notify us within 30 days after receipt of this notice that you dispute the debt or any part of it and do so in writing, we will obtain verification of the debt and mail it to you.  If you request it in writing within 30 days after receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.  Address requests to Alaska Trustee, LLC . . . .

an additional page that stated at the bottom: "THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT THE DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." It also provided this information for the recipient: "Your rights will clearly be affected by the foreclosure and you may wish to seek legal advice. If you have been discharged of this debt in Bankruptcy, you are not to regard this message as a demand for payment or an assertion of personal liability."

Federal law requires, among other things, that a consumer be informed of "the amount of the debt" in the initial communication about the debt or within five days thereafter.[3] Alaska Trustee's notices to the Ambridges each stated the principal amount due, but neither stated the full amount due, as they failed to specify what was owed for "interest, late charges, costs and any future advances." Alaska Trustee conceded in the superior court that, if it is subject to the FDCPA, its notices violated that law by failing to state the full amounts due.

### B. Alaska Trustee

Alaska Trustee is a limited liability company, formed in 2005 by Routh, an attorney, who continues to be the company's owner and managing member. Alaska Trustee's activities consist of "processing non-judicial foreclosures of deeds of trust on real property." This includes "ordering the title report, recording the Notice of Default in the real property records, providing notice of the foreclosure as required by statute, responding to requests from the borrower . . . for reinstatement or payoff quotes," and handling formalities before and after foreclosure sales. If a borrower asks for information about reinstating a loan in order to avoid foreclosure, Alaska Trustee sends a reinstatement letter that gives the reinstatement amount and allows payment to the

---

[3]     15 U.S.C. § 1692g(a).

mortgage servicer or sometimes to Alaska Trustee itself. Alaska Trustee does not bring suit to recover on an underlying note, nor does it write demand letters.

The details of Routh's involvement with Alaska Trustee are also important to the resolution of this appeal; they are discussed below in section IV.B.

## C.    Proceedings In The Superior Court

The Ambridges filed a complaint against Alaska Trustee and Routh alleging violations of the federal Fair Debt Collection Practices Act (FDCPA) and Alaska's Unfair Trade Practices and Consumer Protection Act (UTPA). They asked for injunctive and declaratory relief, requiring the defendants to include the actual amount of the debt owed in their first communications with consumers; they also requested damages, costs, and full attorney's fees. The superior court ruled on a number of dispositive motions. As relevant to this appeal, the superior court held that both Alaska Trustee and Routh were "debt collectors" subject to 15 U.S.C. § 1692g(a). It held that a violation of the FDCPA translates into an "unfair or deceptive" act or practice prohibited by the UTPA. It also held that the Ambridges were entitled to a private injunction under AS 45.50.535(a), requiring Alaska Trustee to include in its notices of default the information required by federal law. However, it dismissed the claim for damages under the UTPA, on grounds that the Ambridges failed to demonstrate any ascertainable loss. The court also dismissed the UTPA injunction claims against Routh on grounds that he was never provided with pre-suit notice of his potential violations as required by AS 45.50.535.

The superior court entered a final judgment awarding the Ambridges $4,000 in damages under the FDCPA. Alaska Trustee and Routh appeal the superior court's adverse decisions, arguing that (1) Alaska Trustee is not a "debt collector" subject to the FDCPA; (2) Routh is not a "debt collector" subject to the FDCPA; and (3) the Ambridges were not entitled to injunctive relief under the UTPA.

## III. STANDARDS OF REVIEW

"We review a grant of summary judgment 'de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.' "[4] We "view the facts in the light most favorable to the non-moving part[ies],"[5] drawing "all reasonable [] inferences" in their favor.[6] We review questions of law de novo, "apply[ing] our independent judgment . . . , 'adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[7] Similarly, "[w]e apply our independent judgment in matters of statutory interpretation,"[8] interpreting "the statute in question by looking to the meaning of the statute's language, its legislative history, and its purpose."[9]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Determining That Alaska Trustee Is A "Debt Collector" Under § 1692a(6) Of The FDCPA.

The FDCPA was enacted in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote

---

[4] *Olson v. City of Hooper Bay*, 251 P.3d 1024, 1030 (Alaska 2011) (quoting *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008)).

[5] *Id.* (quoting *McCormick v. Reliance Ins. Co.*, 46 P.3d 1009, 1011 (Alaska 2002)).

[6] *Id.* (quoting *McCormick*, 46 P.3d at 1013).

[7] *Id.* (first alteration in original) (quoting *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008)).

[8] *McLeod v. Parnell*, 286 P.3d 509, 512 (Alaska 2012) (citing *Hageland Aviation Servs., Inc. v. Harms*, 210 P.3d 444, 448 (Alaska 2009)).

[9] *Id.* (quoting *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Progressive Cas. Ins. Co.*, 165 P.3d 624, 628 (Alaska 2007)).

consistent State action to protect consumers against debt collection abuses."[10] The FDCPA defines a "debt" as a consumer obligation to pay money, arising out of a transaction the subject of which is "primarily for personal, family, or household purposes."[11] "Debt collector" is defined, in relevant part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[12] The definition has one other sentence relevant here: "For the purpose of section 1692f(6) of this title, ['debt collector'] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."[13] Section 1692f(6), in turn, describes violations of the FDCPA to include

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

The superior court noted a split in the way courts apply these sections:

---

[10] 15 U.S.C. § 1692(e) (2012); *see also* 15 U.S.C. § 1692(a) ("There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.").

[11] 15 U.S.C. § 1692a(5).

[12] 15 U.S.C. § 1692a(6).

[13] *Id.* The statute also lists six categories that Congress explicitly excluded from the definition of "debt collector," none of which applies to Alaska Trustee. 15 U.S.C. § 1692a(6)(A)-(F).

some hold that enforcers of security interests are debt collectors as long as they meet the general definition of § 1692a(6),[14] while others hold that enforcers of security interests are debt collectors only for purposes of § 1692f(6).[15] Recognizing that the FDCPA, as a remedial statute, should be liberally construed, the superior court followed the first line of authority, determining that an entity pursuing nonjudicial foreclosure is a debt collector subject to the FDCPA.

[14]     Supporting this position are cases from four federal circuit courts of appeal and one state supreme court: *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 463-64 (6th Cir. 2013); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218-19 (11th Cir. 2012); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 123-24 (Colo. 1992). *See also Kabir v. Freedman Anselmo Lindberg LLC*, No. 14 C 1131, 2015 WL 4730053, at *2-3 (E.D. Ill. Aug. 10, 2015) (noting that "[t]he Seventh Circuit has not determined whether mortgage foreclosure actions qualify as debt collection activities under the FDCPA, but those courts of appeals to consider the issue have all held that communications related to mortgage foreclosures are covered by the FDCPA," and following that authority); *Paulsen v. Blommer Peterman, S.C.*, No. 14-cv-106-wmc, 2015 WL 1486546, at *2-4 (W.D. Wis. Mar. 31, 2015) (same); *Muldrow v. EMC Mortg. Corp.*, 657 F. Supp. 2d 171, 175-76 (D.D.C. 2009) (noting that "this Circuit has not determined whether § 1692a(6) of the FDCPA excludes substitute trustees from liability under the general provisions of the FDCPA" and following *Wilson*); *Porada v. Monroe*, No. A13-1615, 2014 WL 3700820, at *4 (Minn. App. July 28, 2014) (unpublished) (noting that "the weight of persuasive authority lies heavily in favor of the conclusion that a lien foreclosure constitutes a debt collection under the FDCPA").

[15]     A number of federal district courts have reached this conclusion, including many within the Ninth Circuit. *See, e.g.*, *Doughty v. Holder*, Nos. 2:13-cv-00295-LRS, 2:13-cv-00296-LRS, 2:13-cv-00297-LRS, 2014 WL 220832, at *3-5 (E.D. Wash. Jan. 21, 2014); *Natividad v. Wells Fargo Bank, N.A.*, 3:12-cv-03646 JSC, 2013 WL 2299601, at *5-8, *5 n.4 (N.D. Cal. May 24, 2013) (collecting cases); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002); *see also Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM)(RER), 2013 WL 5436969, at *8-12 (E.D.N.Y. Sept. 27, 2013); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 323-25 (D. Conn. 2012); *Gray v. Four Oak Court Ass'n*, 580 F. Supp. 2d 883, 887-88 (D. Minn. 2008); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 & n.3 (N.D. Ind. 2004).

Alaska Trustee disputes this conclusion. It argues first that recovering collateral is a fundamentally different activity than seeking the payment of money, and that the FDCPA is concerned only with the latter. It highlights the distinction between judicial foreclosures — which may result in a deficiency judgment for the payment of money — and nonjudicial foreclosures, which result only in loss of the property.[16] It cites cases holding that the processing of nonjudicial foreclosures does not constitute debt collection for purposes of the FDCPA.[17] And it contends that its position is supported by the FDCPA's definition of "debt collector," which it interprets to mean that an entity that enforces security interests can *only* be a debt collector for purposes of § 1692f(6) — which prohibits conduct "[t]aking or threatening to take any nonjudicial action to effect dispossession . . . of property" when there is no present right or intention to do so — a category that does not include Alaska Trustee.

### 1. The FDCPA does not exclude nonjudicial foreclosure from the debt-collection activities it addresses.

Interpreting the FDCPA liberally to effectuate its remedial purposes, as the

---

[16]    *See Stamper v. Wilson & Assocs., P.L.L.C.*, No. 3:09-CV-270, 2010 WL 1408585, at *7 (E.D. Tenn. Mar. 31, 2010) ("In contrast to judicial foreclosures, non-judicial foreclosures do not involve personal ('deficiency') judgments against the debtor. This is important to recognize because the FDCPA defines 'debt' as an 'obligation to pay money,' and there is no enforcement of that obligation in non-judicial foreclosures."); *see also Derisme*, 880 F. Supp. 2d at 326 ("[C]ourts have drawn a distinction between non judicial foreclosures which are intended to only enforce the mortgagee's security interest and judicial foreclosure which also seeks a personal judgment against the debtor for a deficiency which would amount to a debt collection.").

[17]    *See, e.g.*, *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (holding that defendant's involvement "primarily in non-judicial foreclosures" does not make him a per se FDCPA debt collector); *Santoro v. CTC Foreclosure Serv.*, 12 F. App'x 476, 480 (9th Cir. 2001) ("[Defendant's] foreclosure sale notice also did not seek to collect the debt, the conduct forbidden under the [FDCPA]."); *Hulse*, 195 F. Supp. 2d at 1204 ("[T]he activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA.").

superior court did,[18] we join those courts holding that mortgage foreclosure, whether judicial or nonjudicial, is debt collection covered by the Act. Our holding relies first on the Act's broad language. The definition of "debt"[19] plainly encompasses a home mortgage, which is usually the most significant of a consumer's debts, and the definition does not differentiate between consumer debts that are secured and those that are not. The Act's definition of "debt collector" is similarly broad, covering regular collection efforts that are either direct or indirect.[20] As to the first question raised by this case — whether the nonjudicial foreclosure of a security interest is a method of "collect[ing] or attempt[ing] to collect, directly or indirectly," a "debt," that is, a consumer's "obligation . . . to pay money" — we agree with the Sixth Circuit's common-sense answer: "In fact, *every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (*i.e.*, forcing a settlement) or compulsion (*i.e.*, obtaining a judgment of foreclosure, selling the home at

---

[18] *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014) ("[B]ecause the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer." (quoting *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) (alteration in original))); *see also Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

[19] 15 U.S.C. § 1692a(5) (2012) (defining "debt" as "*any* obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment" (emphasis added)).

[20] 15 U.S.C. § 1692a(6) (defining "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, *directly or indirectly*, debts owed or due or asserted to be owed or due another" (emphasis added)).

auction, and applying the proceeds from the sale to pay down the outstanding debt)."[21]

That Congress intended the FDCPA to apply to home mortgages is evident not just from the Act's broad language but also from its legislative history. The Senate Report on the bill observed, for example, that "[t]he collection of *debts, such as mortgages* and student loans, by persons who originated such loans" is not debt collection, implying that the collection of mortgages by persons who did *not* originate such loans *is* debt collection.[22] The Senate Report further stated that the activities of "mortgage service companies" are not covered by the law "so long as the debts were not in default when taken for servicing," implying, again, that the activities of mortgage service companies *are* covered if they otherwise meet the statutory definition.[23] And as originally enacted in 15 U.S.C. § 1692*l*, the FDCPA's "Administrative enforcement" section assigned enforcement of the FDCPA not only to the Federal Trade Commission, but also to the Federal Home Loan Bank Board under "section 5(d) of the Home Owners Loan Act of 1933, section 407 of the National Housing Act, and sections 6(i) and 17 of the Federal Home Loan Bank Act, . . . in the case of any institution subject to any of those provisions."[24] The Federal Home Loan Bank Board was created by the Federal Home Loan Bank Act of 1932 to oversee Federal Home Loan Banks, which in turn were

---

[21] *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013).

[22] *See* Eric M. Marshall, Note, *The Protective Scope of the Fair Debt Collection Practices Act: Providing Mortgagors The Protection They Deserve From Abusive Foreclosure Practices*, 94 MINN. L. REV. 1269, 1291 (2010) (emphasis added) (quoting S. REP. NO. 95-382, at 3 (1977)).

[23] S. REP. NO. 95-382, at 3-4 (1977).

[24] Fair Debt Collections Practices Act, Pub. L. No. 95-109, 91 Stat. 874, 882 (1977). In the 1976 United States Code, "section 5(d) of the Home Owners Loan Act of 1933" was codified as 12 U.S.C. § 464; "section 407 of the National Housing Act" was codified as 12 U.S.C. § 1730; and "sections 6(i) and 17 of the Federal Home Loan Bank Act" were codified as 12 U.S.C. §§ 1426 and 1427.

created to ensure that local lenders had funds available to finance home mortgages.[25] Although none of the cited laws are concerned *exclusively* with home mortgages, that is their primary focus;[26] their specific mention in the FDCPA shows at least Congress's awareness that unfair debt collection practices occurred in the same regulated arena.

The FDCPA's list of enforcement agencies was most recently modified and simplified under the Dodd-Frank Act; it now charges "the appropriate Federal banking agency" with enforcement with respect to FDIC-insured banks and "State savings associations," and it charges the newly-created Consumer Financial Protection Bureau (the Bureau) with enforcement "with respect to any person subject to this subchapter."[27] It is the Bureau's statutory duty to "regulate the offering and provision of consumer

___

[25] The Federal Home Loan Bank Board was superceded in 1989 by the Federal Housing Finance Board, which in turn was superceded in 2008 by the Federal Housing Finance Agency. *See* Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, secs. 401(a)(2), 702-703, 12 U.S.C. §§ 1422a, 1437(a), 103 Stat. 183, 354, 413, 415; Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, secs. 1101, 1311, 12 U.S.C. §§ 4511, 4512, 122 Stat. 2654, 2661.

[26] The primary purpose of the Home Owners' Loan Act of 1933 is "[t]o provide emergency relief with respect to home mortgage indebtedness, to refinance home mortgages, [and] to extend relief to the owners of homes occupied by them and who are unable to amortize their debt elsewhere." Home Owners' Loan Act of 1933, ch. 63, § 1, 48 Stat. 128. The National Housing Act's full title is "An Act: To encourage improvement in housing standards and conditions, to provide a system of mutual mortgage insurance, and for other purposes." National Housing Act, ch. 847, 48 Stat. 1246 (1934). The Home Loan Bank Act, as its name implies, focused on increasing the nationwide availability of loans secured by home mortgages. *See* Home Loan Bank Act, ch. 522, § 10(a), 47 Stat. 725, 731 (1932) ("Each Federal Home Loan Bank is authorized to make advances to members and nonmember borrowers, upon the security of home mortgages.").

[27] *See* Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, sec. 1089, § 1692*l*, 124 Stat. 1376, 2092-93 (2010) (amending the FDCPA).

financial products or services under the Federal consumer protection laws,"[28] and Dodd-Frank requires that courts defer to the Bureau's interpretation of federal consumer financial laws "as if the Bureau were the only agency authorized to apply, enforce, interpret, or administer" such laws.[29]  And as is described further below, the Bureau is adamant in its view that home mortgage foreclosures are subject to the FDCPA.

In *Glazer v. Chase Home Finance*, the Sixth Circuit found further support for this interpretation of the Act in § 1692i.[30]  That provision requires that a debt collector who is bringing "an action to enforce an interest in real property securing the consumer's obligation" shall "bring such action only in a judicial district . . . in which such real property is located."[31]  As the court noted in *Glazer*, § 1692i, limited to "debt collectors," "suggests that filing *any* type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act."[32]

### 2. We are persuaded by the rationale of those courts holding that the FDCPA applies to mortgage foreclosures.

The Sixth Circuit in *Glazer* found persuasive the decision of the Fourth Circuit in *Wilson v. Draper & Goldberg, P.L.L.C.*,[33] as do we.  *Wilson* has a factual background similar to that presented here.  The defendant law firm was retained by a

---

[28]     12 U.S.C. § 5491(a) (2012) (a Dodd-Frank provision).

[29]     12 U.S.C. § 5512(b)(4)(B).

[30]     704 F.3d 453, 461-62 (6th Cir. 2013).

[31]     15 U.S.C. § 1692i(a)(1) (2012); *see also* S. REP. NO. 95-382, at 5 (1977) (noting that to prevent "forum abuse," "[w]hen an action is against real property, it must be brought where such property is located").

[32]     704 F.3d at 462  (emphasis in original).

[33]     *Id.* at 462-63 (citing *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376, 378 (4th Cir. 2006)).

bank to foreclose on the plaintiff's mortgage.[34] It sent a letter advising the plaintiff of her default and its plan to commence foreclosure proceedings in the near future; the letter further advised that it was "written pursuant to the provisions of the [FDCPA]" and was "an attempt to collect a debt" but that the law firm was not a "debt collector[]."[35] In a follow-up letter, the law firm responded to the plaintiff's request for the amount necessary to reinstate the loan and explained how a reinstatement payment should be made.[36]

The plaintiff sued for violations of the FDCPA: specifically, "failing to verify the debt, . . . continuing collection efforts after [the plaintiff] had contested the debt, and . . . communicating directly with her when they knew she was represented by counsel."[37] The district court granted summary judgment to the defendants, concluding that "[t]rustees foreclosing on a property pursuant to a deed of trust are not 'debt collectors' under the [Act]."[38]

But the Fourth Circuit reversed. It first rejected the defendants' argument that they had not acted in connection with a "debt":

> Defendants notified [the plaintiff] that she was in "default in [her] Deed of Trust Note payable to the Lender . . . [and] that the Lender [had] accelerated the *debt*." Defendants informed [the plaintiff] that her failure to make mortgage payments entitled Chase to immediate payment of the balance of her loan, as well as fees, penalties, and interest due. These amounts are all "debts" under the Act, because they were "obligation[s] . . . to pay money arising out of a transaction in

---

[34] *Wilson*, 443 F.3d at 374.

[35] *Id.* at 374-75.

[36] *Id.* at 375.

[37] *Id.*

[38] *Id.* (alterations in original).

which the . . . property . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes."[39]

The court next rejected the defendants' argument that the " 'debt' ceased to be a 'debt' once foreclosure proceedings began."[40] It held that the debt remained a debt, and that the defendants' "actions surrounding the foreclosure proceeding were attempts to collect that debt."[41] It observed that accepting the defendants' contrary argument "would create an enormous loophole in the Act immunizing any debt from coverage if the debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt," and it saw "no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods."[42] Finally, the court noted the law firm's provision of a reinstatement amount, payable to the law firm directly by cashier's check, as additional evidence that the law firm was a debt collector attempting to collect a debt.[43]

The Colorado Supreme Court reached the same conclusion in *Shapiro & Meinhold v. Zartman.*[44] Liberally construing the FDCPA's definition of "debt collector" in light of the Act's remedial purposes, the court held that the defendants in that case — attorneys pursuing judicial foreclosure proceedings — were "not exempt [from coverage under the Act] merely because their collection activities [were] primarily limited to

---

[39] *Wilson*, 443 F.3d. at 376 (alterations in original) (citation omitted) (quoting 15 U.S.C. § 1692a(5)).

[40] *Id.*

[41] *Id.* (citing *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (3d Cir. 1998); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992)).

[42] *Id.*

[43] *Id.* at 376-77.

[44] 823 P.2d at 124.

foreclosures."[45] Noting that the FDCPA's definition of "debt collector includes one who 'directly or indirectly' engages in debt collection activities on behalf of others," the court concluded: "Since a foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt, those who engage in such foreclosures are included within the definition of debt collectors if they otherwise fit the statutory definition."[46]

We agree that foreclosing on property, selling it, and applying the proceeds to the underlying indebtedness constitute one way of collecting a debt — if not directly at least indirectly. The language of the Amended Notice of Default at issue here supports this conclusion. Besides its express declaration that "[t]he purpose of this letter is to collect a debt" and its inclusion of a "Fair Debt Collection Practices Act Statement,"[47] the Notice states "[t]he amount of the obligation secured" ("$196,712.28, plus interest, late charges, costs and any future advances") and gives notice that the trustee has elected to sell the property "and apply the proceeds to the indebtedness." It asserts that "[i]*f you have been discharged of this debt in Bankruptcy*, you are not to regard this message as a demand for payment" (emphasis added), strongly implying that *absent* a discharge in

---

[45]     *Id.*

[46]     *Id.*

[47]     We recognize the potential unfairness of relying on such language alone, given that entities that may or may not be subject to the FDCPA will understandably err on the side of caution and include it. *See Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948, 959-61 (E.D. Mich. 2012) (holding, pre-*Glazer*, that law firm that was a "debt collector" only for the limited purposes of 15 U.S.C. §1692f(6) was not made subject to the entire FDCPA because of the "debt collector" warnings on its letters). On the other hand, especially under the "least sophisticated consumer" standard applied by the federal courts, it is difficult to conclude that a debtor reading the disclosure language would not believe what it says — that Alaska Trustee is attempting to collect a debt. *See, e.g.*, *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535-36 (6th Cir. 2014) (discussing nature of creditor's assertion of lien in light of how it would be perceived by the "least sophisticated consumer").

bankruptcy the letter *is* a demand for payment. And as in *Wilson*, the follow-up letter states the amount of money necessary to reinstate the loan and gives payment instructions for reinstatement.[48] Whether through reinstatement or less directly through foreclosure sale and recovery of the proceeds, "[t]here can be no serious doubt that the ultimate purpose of [this] foreclosure is the payment of money."[49]

### 3. The arguments against holding that the FDCPA applies to mortgage foreclosures are not persuasive.

For its different interpretation of the FDCPA, Alaska Trustee relies in part on the reasoning of the federal district court in *Hulse v. Ocwen Federal Bank, FSB*, which concluded that "[t]he FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor," whereas "foreclosing on a trust deed is an entirely different path."[50]

According to the court in *Hulse*, "[p]ayment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property."[51] Alaska Trustee reasons further that the FDCPA is not meant to protect the possessor of secured property in the same way it protects other debtors: while it may be futile to harass a debtor for the repayment of funds the debtor does not have, the possessor of secured property can avoid harassment by simply returning the property (and therefore

---

[48] *See Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375 (4th Cir. 2006). Here, the reinstatement letter states, "Reinstatement funds **must** be in the form of a cashier's check made payable to" and provides boxes to be checked beside two choices: "Alaska Trustee, LLC" and "Our client: **Wells Fargo Bank, N.A.**" Only the "Our client" box is checked, but the letter also makes it clear that in order for the loan to be reinstated the check must be received *by Alaska Trustee* ("in our office") by a time certain.

[49] *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 463 (6th Cir. 2013).

[50] 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).

[51] *Id.*

needs less protection from harassment).[52]

We do not find this rationale persuasive. As the Ambridges point out, a home mortgage is, for most individuals, their largest and most long-term debt and the most likely to be affected at some point by unforeseen financial difficulties. The lender's foreclosure on its security — the home — is likely to be a devastating prospect for the homeowner, who may therefore be particularly susceptible to abusive collection practices.[53] If Congress had intended to exclude such a substantial segment of consumer debt from the reach of the FDCPA, it could easily have said so explicitly.[54] Indeed, the Act's definition of "debt collector" lists six specific exclusions from the definition, none of which encompasses the enforcers of mortgages or other security interests.[55] Had Congress intended to exclude such a significant category from the Act's coverage, the list of exclusions would have been the obvious place for it to do so.

The dissent finds determinative the distinction between a consumer's obligation to pay money and a deed of trust, which is not itself an obligation to pay money but rather a mechanism by which property is transferred in the event the money

---

[52]   *See Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 658 (D. Del. 1990) ("[T]he evil sought to be regulated by the FDCPA, *i.e.*, harassing attempts to collect money which the debtor does not have due to misfortune, is not implicated by the actions of an enforcer of a security interest with a 'present right' to the secured property.").

[53]   *See* Marshall, *supra* note 22, at 1287 ("The detrimental effect of losing one's home makes mortgagors particularly susceptible to coercive settlement practice." (footnote omitted)).

[54]   *See Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992) ("If Congress had intended to exempt from the FDCPA one whose principal business is the enforcement of security interests, it would have provided an exception in plain language.").

[55]   15 U.S.C. § 1692a(6)(A)-(F) (2012).

is not paid.[56] But in the past we have taken a more functional approach. In *Dworkin v. First National Bank of Fairbanks*[57] we considered whether an action to foreclose a mortgage was governed by a ten-year statute of limitations for actions to enforce real property liens or instead by the six-year statute of limitations for actions to collect the underlying debt. We recognized two schools of thought on the issue but concluded that "[i]n our view the sounder result is reached by those authorities which hold that in the absence of a controlling statute the foreclosure action is subject to the same period of limitations as the underlying debt."[58] We relied on language the Washington Supreme Court had quoted with approval from a Colorado case:

> In Colorado, whether the form of security be a mortgage or a deed of trust, *the debt is the principal thing. The security is a mere incident. . . . An action to foreclose a mortgage or deed of trust is simply, in effect, an action to collect the debt, to secure the payment of which was the sole purpose of its execution;* and, when the statute after the lapse of a certain time bars an action upon the debt for its collection, we believe it includes all actions seeking to effectuate that purpose.[59]

This description continues to reflect the real nature of a home mortgage foreclosure: "simply, in effect, an action to collect the debt."

We also disagree with the dissent's position that Alaska Trustee cannot be held liable under the FDCPA for sending the notice that commences a non-judicial

---

[56] Dissent at 1-5.

[57] 444 P.2d 777, 780-82 (Alaska 1968).

[58] *Id.* at 782 (citing 3 R. POWELL, THE LAW OF REAL PROPERTY ¶ 461, at 682-83 (1967)); *see also id.* at 782 n.24 (noting the "undesirability of the results" in states that allow foreclosure after the statute of limitations has run on collection of the underlying debt).

[59] *Id.* (emphasis added) (quoting *Pratt v. Pratt*, 209 P. 535, 536 (Wash. 1922) (quoting *McGovney v. Gwillim*, 65 P. 346, 347 (Colo. App. 1901))).

foreclosure under Alaska law because the notice "did not attempt to collect money" and because it is statutorily required.[60]  As explained above, we conclude that a reasonable consumer *would* read the notice as a demand for payment; the debtor can avoid the threatened action only by paying the debt.  And that a notice is required in order to advance a state foreclosure proceeding does not mean it cannot at the same time be an attempt to collect a debt and thus subject to the FDCPA.  In *Romea v. Heiberger & Associates*, for example, a landlord's law firm pursuing evictions was required by New York law to give a three-day notice of the amount of past-due rent as the first step in a "summary proceeding to recover possession of real property."[61]  The law firm argued that the purpose of the repossession process was "not debt collection, but rather 'a means of quickly adjudicating disputes over rights of possession of real property,' " to which the amount owed by the tenant was merely "incidental."[62]  The court rejected these arguments in language equally relevant here:  "Although [the law firm] is correct that the notice required by [the summary eviction law] is a statutory condition precedent to commencing a summary eviction proceeding that is possessory in nature, this does not mean that the notice is mutually exclusive with debt collection."[63]  The Consumer Financial Protection Bureau takes the same position.[64]

---

[60]     Dissent at 13-16.

[61]     163 F.3d 111, 116 (2d Cir. 1998).

[62]     *Id.*

[63]     *Id.*

[64]     Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Appellant and Reversal at 13, *Ho v. ReconTrust Co.*, No. 10-56884 (Aug. 7, 2015), http://files.consumerfinance.gov/f/201508_cfpb_amicus-brief_ho-v-reconstruct-n.pdf. ("That such a misrepresentation might have occurred in the context of a state-mandated notice does not somehow immunize Appellees from abiding by § 1692e in the course of providing such notices.").

Finally, we disagree with the dissent's warning that "making deed of trust trustees . . . 'debt collectors' will wreak havoc" on the non-judicial foreclosure process because the FDCPA allows consumers to ask debt collectors to cease contact and to validate disputed debts, steps the dissent predicts "will grind non-judicial deed of trust foreclosures to a halt."[65] But the FDCPA specifically allows continued communication with a consumer "where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy,"[66] an exception that applies to the types of notice provided during nonjudicial foreclosure proceedings.[67] And the debt validation procedure contemplated by the FDCPA can be as simple as mailing the consumer a copy of "verification of the debt *or* a copy of a judgment, *or* the name and address of the

---

[65]     Dissent at 7-8 (citing 15 U.S.C. §§ 1692c(c) and 1692g(b) (2012)).

[66]     15 U.S.C. § 1692c(c)(3).

[67]     *See Graveling v. Castle Mortg. Co.*, ___ F. App'x ___, No. 14-15198, 2015 WL 6847947 at *7 (11th Cir. Nov. 9, 2015) ("[E]ven if the [debtors'] request that the defendants cease communications was distinct from their request for debt validation, the acceleration notice was still a permissible communication because it notified the [debtors] of [the debt collector's] intent to invoke the specific remedy of acceleration and foreclosure."); *Cohen v. Beachside Two-I Homeowners' Ass'n*, No. 05-706 ADM/JS, 2006 WL 1795140 at *14 (D. Minn. 2006) (holding that attorney's letter "falls within the third statutory exception to 15 U.S.C. § 1692c(c) because [the attorney] was further notifying [the debtor] of [the creditor's] intent to invoke a specified remedy, namely, foreclosure" (specifically "foreclosure by advertisement," a nonjudicial foreclosure remedy provided by state law)); *see also Vitullo v. Mancini*, 684 F. Supp. 2d 747, 758 (E.D. Va. 2010) (dismissing a claim that notice of a nonjudicial foreclosure notice violated 15 U.S.C. § 1692c(a)(2) because "the FDCPA does not prohibit debt collectors from foreclosing on debtors' properties pursuant to state law, and nothing in the FDCPA authorizes debt collectors to violate or fail to comply with state foreclosure laws"); *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290, 293 (S.D. Ohio 1996) *aff'd*, 135 F.3d 389 (6th Cir. 1998) (dismissing a claim that a debt collector with "notice not to make further contact" violated 15 U.S.C. § 1692c(c) because the letter offered payment plans that were covered under § 1692c(c)(2) as a "standard remedy 'ordinarily invoked by such debt collector' ").

original creditor,"[68] a step we doubt a trustee would have difficulty taking if asked.[69]

**4. Mortgage foreclosure is not governed by section 1692f(6) alone.**

Finally, we necessarily reject Alaska Trustee's other definitional argument, also advanced by the dissent[70]: that under § 1692a(6), entities enforcing security interests are "debt collectors" only for purposes of § 1692f(6), i.e., if they are "[t]aking or threatening to take any nonjudicial action to effect dispossession . . . of property" when there is no present right or intention to do so. We note again the structure of the definitional section, which defines "debt collector" to include a person in a business "the principal purpose of which is the collection of any debts" and a person who "regularly collects or attempts to collect" debts due another.[71] This general definition is explicitly *expanded*, not qualified, by the phrase, "For the purpose of section 1692f(6) of this title, such term *also includes* any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security

---

[68]     15 U.S.C. § 1692g(b) (emphasis added).

[69]     The Ninth Circuit has followed other federal courts to hold that "verification of a debt [for purposes of § 1692g(b)] involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173-74 (9th Cir. 2006) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)); *see also Maynard v. Cannon*, 401 F. App'x 389, 396 (10th Cir. 2010) ("This provision is not intended to give a debtor a detailed accounting of debt to be collected. Instead, '[c]onsistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' " (quoting *Chaudhry*, 174 F.3d at 406)).

[70]     Dissent at 3-5.

[71]     15 U.S.C. § 1692a(6).

interests." [72] The phrase "also includes" cannot reasonably be read to eliminate persons who would otherwise be included in the Act's broad definition.

We do agree with the dissent's observation that, structurally, the definition differentiates between businesses the principal purpose of which is "the collection of any debts" and those the principal purpose of which is "the enforcement of security interests." We agree that a business cannot be both. But a business whose principal purpose is not "the collection of any debts" may still be a debt collector under the general definition because, though its "principal purpose" is something else, it "regularly collects or attempts to collect" debts due another. Such a business may have as its principal purpose the enforcement of security interests. On the other hand, a business may enforce security interests as its principal purpose but *not* regularly collect debts; such a business does not satisfy the general definition and is a "debt collector" for purposes of section 1692f(6) only.

To say that mortgage foreclosures are debt collection is not to say, as the dissent would have it, that all enforcement of security interests is debt collection, thus making the definition's reference to security interests redundant.[73] The FDCPA defines "debt" as a consumer's "obligation . . . to pay money."[74] The documents at the heart of this case, though they certainly serve notice purposes in the foreclosure process, also plainly reflect attempts to collect a debt. They are replete with references to "the debt," "the indebtedness," and "the obligation." No reasonable consumer could read the Notice of Default and not understand that, as the Notice plainly states, "The purpose of this letter is to collect a debt." But the enforcement of security interests will not always entail these obvious debt-collection measures. A repossession agency, for example, may take

---

[72] *Id.* (emphasis added).

[73] Dissent at 4-5, 12.

[74] 15 U.S.C. § 1692a(6).

automobiles off the street and have no regular practice of communicating with debtors in a way that a reasonable consumer would interpret as prompting the payment of money — indeed, such businesses may not communicate with debtors at all.[75] Such businesses are brought into the "debt collector" definition for the narrow prohibitive purposes of § 1692f(6) only. But unlike such entities, Alaska Trustee not only enforces security interests; it also attempts to collect debts under the ordinary meaning of those words.

This was the conclusion of the Sixth Circuit in *Glazer*: the third sentence of § 1692a(6) is a statement of inclusion, not exclusion. That is, it does not operate to *exclude* an entire category of persons and entities who would otherwise be included in the definition, but rather "simply 'make[s] clear that some persons who would be without the scope of the general definition are to be included where § 1692f(6) is concerned.' "[76] The Sixth Circuit in *Glazer* concluded that the sentence probably brought into the "debt collector" definition only "repossession agencies and their agents," noting that "we can think of no others whose only role in the collection process is the enforcement of security interests."[77] But even the limited expansion of the definition to "repossession agencies and their agents" serves a real purpose. A company in the business of repossessing vehicles may well have no regular practice of communicating with debtors that would subject the company to the myriad provisions of the Act governing the allowable content

---

[75]    Generally speaking, repossession agencies are "businesses which are employed by the owner of collateral to dispossess the debtor of the collateral and return it to the owner." *Ghartey v. Chrysler Credit Corp.*, 1992 WL 373479, at *4 (E.D.N.Y. Nov. 23, 1992).

[76]    *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 463 (6th Cir. 2013) (quoting *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 236 (3d Cir. 2005)); *see also Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006).

[77]    *Glazer*, 704 F.3d at 463-64.

of such communications;[78] but the definitional section clarifies that even such an entity is prohibited by the Act from repossessing or threatening to repossess the property if there is "no present right" or "present intention" to take it or if the property is exempt from repossession.[79]

We recognize the split in authority regarding the effect of § 1692f(6) on the "debt collector" definition. Alaska Trustee relies on *Derisme v. Hunt Leibert Jacobson P.C.*, which adopted the conclusion of two federal courts of appeal and the Federal Trade Commission (FTC) that "the purposeful inclusion of enforcers of security interests for one section of the FDCPA [§ 1692f(6)] implies that the term debt collector does not include an enforcer of security interests for any other sections of the FDCPA."[80] But both of the cited federal circuits — the Sixth and the Eleventh — have more recently decided the issue the other way, holding that an enforcer of security interests may also be a debt collector subject to the broader provisions of the FDCPA so long as it meets

---

**78** *See* 15 U.S.C. §§ 1692b ("Acquisition of location information"), 1692c ("Communication in connection with debt collection"), 1692d ("Harassment or abuse"),1692e ("False or misleading representations"), 1692f(1)-(5), (7)-(8) ("Unfair practices"), 1692g ("Validation of debts"), 1692h ("Multiple debts"), 1692i ("Legal actions by debt collectors"), 1692j ("furnishing certain deceptive forms").

**79** 15 U.S.C. §§1692a(6), 1692f(6).

**80** 880 F. Supp. 2d 311, 324 (D. Conn. 2012). The court in *Derisme* also relied on the FTC "Commentary on the Fair Debt Collection Practices Act," as cited in *Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 658 (D. Del. 1990), and *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009) (referencing the principle of *expressio unius est exclusio alterius* and concluding that "the statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of §1692f(6), which reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act"). *See Derisme*, 880 F. Supp. 2d at 323-35.

the general definition.[81]  And *Derisme*'s reliance on the FTC commentary[82] appears to have been misplaced.  The commentary provides, "Because the FDCPA's definition of 'debt collection' includes parties whose principal business is enforcing security interests only for . . . [§ 1692f(6)] purposes, such parties (*if they do not otherwise fall within the definition*) are subject only to this provision and not to the rest of the FDCPA."[83]

As noted above, the Dodd-Frank Act gave primary authority for enforcement of the FDCPA to the Consumer Financial Protection Bureau, which has been forceful about the need to ensure that mortgage foreclosure proceedings are not

---

[81]  *See Glazer*, 704 F.3d at 463 (explicitly rejecting *Montgomery*, 346 F.3d 693, 699-701 (6th Cir. 2003) and stating that "the ['debt collector'] definition does not except from debt collection the enforcement of security interests; it simply 'make[s] clear that some persons who would be without the scope of the general definition are to be included where § 1692f(6) is concerned.' " (second alteration in original) (quoting *Piper*, 396 F.3d at 236)); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216-18 (11th Cir. 2012) (holding that an enforcer of security interests could have "dual purposes," whereby it could act to enforce security interests and also attempt to collect on underlying debts); *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 582-83 (11th Cir. 2012) (following *Reese*'s reasoning and explicitly rejecting that of *Warren*).

Both parties to this appeal cite *Dunavant v. Sirote & Permutt, P.C.*, 603 F. App'x 737 (11th Cir. 2015), as supporting their positions.  The court in *Dunavant* affirmed a lower court's ruling that a defendant that only published foreclosure notices in the newspaper was an enforcer of security interests and not a debt collector, but in so doing it reaffirmed that an entity could be both, and that it could be liable under the FDCPA if its activities constituted the collection of a debt.  *Id.* at 740.  The newspaper notices at issue in *Dunavant*, unlike those in this case, were not attempts to collect a debt: they "were not addressed to the debtors, and included no information relating to the collection of payments from them."  *Id.*

[82]  880 F. Supp. 2d at 324 (stating that "the FTC expressed its view that enforcers of security interests only fall within the ambit of § 1692f(6)").

[83]  *Jordan*, 731 F. Supp. at 658 (alteration in original) (emphasis added) (quoting Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988)).

exempted from the FDCPA's protections. In its statutorily mandated annual report to Congress on the Fair Debt Collections Act in 2013, the Bureau explained why it had filed an amicus brief in support of the consumers in *Birster v. American Home Mortgage Servicing, Inc.*,[84] a case recently decided by the Eleventh Circuit:

> Some courts have unduly restricted the FDCPA's protections by rejecting challenges to harmful practices occurring in the context of foreclosure proceedings. In particular, courts have concluded that businesses involved in enforcing security interests are not "debt collectors" subject to most of the Act's requirements, and that activity surrounding foreclosure or other enforcement of security interests is not debt collection covered by the Act. These decisions have left consumers vulnerable to harmful collection tactics as they fight to save their homes from foreclosure.[85]

The court in *Birster* held that a loan servicer that advised the debtors it would foreclose on their home unless they cured their default by paying a certain sum within 30 days "may be liable under the FDCPA beyond § 1692f(6) even though it was also enforcing a security interest."[86] The Bureau's amicus brief in *Birster* was followed by another in

---

[84] 481 F. App'x 579 (11th Cir. 2012); *see* Brief of The Consumer Financial Protection Bureau as *Amicus Curiae* in Support of Plaintiffs-Appellants and Reversal at 16, *Birster v. American Home Mortg. Servicing, Inc.*, 481 F. App'x 579 (11th Cir. 2012) (No. 11-13574-G), http://files.consumerfinance.gov/f/201112_CFPB_ Brister-amicus-brief.pdf ("The plain language, purposes, and prior administrative interpretations of the [FDCPA] all make clear — and the great weight of authority confirms — that an entity meeting the general definition of 'debt collector' qualifies as a 'debt collector' for purposes of the entire Act, even if its principal purpose is enforcing security interests and even if it is enforcing a security interest in the particular case.").

[85] Consumer Fin. Protection Bureau, FAIR DEBT COLLECTION PRACTICES ACT ANN. REP., 27 (2013).

[86] *Birster*, 481 F. App'x at 583. The dissent questions our reliance on Eleventh Circuit law, stating that "Eleventh Circuit district courts continue to answer this question ['whether a party enforcing a security interest without demanding payment on

(continued...)

*Ho v. ReconTrust Co.*, in which the Bureau again advanced the same interpretations of the Act.[87]

Ultimately, while the provisions of the FDCPA could certainly be clearer on the question presented in this case, we conclude that the meaning we find in them is most consistent with their language, liberally interpreted in light of the Act's remedial purposes. The superior court was correct in ruling that Alaska Trustee, through its processing of nonjudicial foreclosures, is a "person who uses . . . the mails in any business the principal purpose of which is the collection of any debts," is therefore a "debt collector" as defined by § 1692a(6), and is subject to the broader provisions of the FDCPA.[88]

---

[86](...continued)
the underlying debt is attempting to collect a debt'] in the negative". Dissent at 15 and n.52 (citing *Beepot v. J.P. Morgan Chase Nat'l Corp.Servs.*, 57 F. Supp. 3d 1358, 1376 (M.D. Fla. 2014) (relying on *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460-61 (11th Cir. 2009), and *Freire v. Aldridge Connors, LLP*, 994 F. Supp. 2d 1284, 1287-88 (S.D. Fla. 2014). Another district court within the Eleventh Circuit has concluded that "the *Warren* rule has been undermined, if not overturned, by two subsequent Eleventh Circuit opinions," *Reese* and *Birster*, and "[i]f nothing else, it is now clear that 'the enforcer of a security interest [can] be held liable under the FDCPA beyond § 1692f(6)' because, in one fell swoop, 'an entity can both enforce a security interest and collect a debt.' " *Deutsche Bank Trust Co. Americas v. Garst*, 989 F. Supp. 2d 1194, 1200 (N.D. Ala. 2013) (emphasis omitted). As for *Freire*, while it perhaps interpreted *Reese* too narrowly in light of *Birster*, the court nonetheless reached a result consistent with it, holding that a foreclosure complaint that attached a notice of the amounts due could have a "dual purpose" of both enforcing a security interest and collecting a debt. *Freire*, 994 F. Supp. 2d at 1288-89.

[87] Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Appellant and Reversal at 6-20, *Ho v. ReconTrust Co.*, No. 10-56884 (Aug. 7, 2015), http://files.consumerfinance.gov/f/201508_cfpb_amicus-brief_ho-v-recontrust-n.pdf.

[88] We used broad language in *Barber v. National Bank of Alaska*, 815 P.2d 857, 860-61 (Alaska 1991), to conclude that the FDCPA was not intended to encompass

(continued...)

**B.** **The Superior Court Did Not Err In Determining That Routh Is A "Debt Collector" Under The FDCPA, But The Evidence Did Not Support Its Conclusion That Routh Was Liable For The Violation At Issue.**

We also affirm the superior court's decision that Steven Routh, Alaska Trustee's sole owner and shareholder, was a "debt collector" subject to liability under the FDCPA, but we disagree with the superior court's conclusion that Routh was therefore necessarily liable for the violation at issue.

Alaska Trustee argues that Routh cannot be held liable under the FDCPA unless he personally participated in a specific violation of the Act. Alaska Trustee focuses on the statutory section Routh is alleged to have violated, which states in relevant part: "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication . . . , send the consumer a written notice containing . . . the amount of the debt . . . ."[89] According to Alaska Trustee, "[t]he statute clearly places the burden of providing the amount of the debt on the debt collector who sent the initial communication to the debtor[,] . . . the Alaska Trustee employee who mailed the Notice of Default, and Alaska Trustee itself." Holding Routh liable for the

---

[88](...continued)
mortgages or mortgage service companies. But the issue before us in *Barber*, and the authority on which we relied, were limited to "mortgage service companies servicing debts which were not in default when service commenced," a category clearly excluded from the Act's definition of "debt collector." *Id.* at 860; 15 U.S.C. § 1692a(6)(F) (defining "debt collector" as not including a person engaged in collection activity that "concerns a debt which was not in default at the time it was obtained by such person."); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (observing that legislative history "indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.").

[89]     15 U.S.C. § 1692g(a)(1).

business's debt-collection practices, Alaska Trustee argues, is an assertion of vicarious liability, contravening state law intended to insulate members of limited liability companies from individual liability for corporate acts.[90]

Alaska Trustee urges that we instead apply the Ninth Circuit's analysis in *Cruz v. International Collection Corp.*, in which the court considered the FDCPA liability of the sole owner, officer, and director of a debt collecting company.[91] The court observed in *Cruz* that merely because an individual meets the definition of "debt collector" does not mean he has violated the FDCPA: "[T]he FDCPA does not prohibit merely qualifying as a debt collector but instead prohibits debt collectors from taking certain specific actions."[92] Determining individual liability under the FDCPA is therefore a two-step analysis, in which courts ask "1) whether the individual qualifies as a debt collector, and 2) whether that individual has taken an action that violates the FDCPA."[93] We agree that this two-step analysis is appropriate.

Again, "debt collector" is relevantly defined as "any person who uses . . . the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed . . . or due another."[94] We agree that a person with a mere ownership interest in a debt

---

[90] *See* AS 10.50.265 ("A person who is a member of a limited liability company . . . is not liable, solely by reason of being a member, . . . for a liability of the company to a third party . . . for the acts or omissions of another member . . . or employee of the company to a third party.").

[91] 673 F.3d 991 (9th Cir. 2012).

[92] *Id.* at 999-1000.

[93] *Id.* at 1000.

[94] 15 U.S.C. § 1692a(6).

collection business is unlikely to fall within this definition.[95]  But the facts of this case go beyond mere ownership.

The evidence showed that Routh was Alaska Trustee's sole owner and managing member and had been since the company's creation in 2005.  He was ultimately in charge of the company's operations, though he attested that in recent years his management was "at the enterprise level of client relations, staffing decisions, strategic planning and the like" and that he often spent "only a few hours a week, if any," at Alaska Trustee's offices.  The day-to-day manager, Athena Vaughn, reported to him and in turn supervised the other managerial employee, Rose Santiago.  Routh testified that Vaughn and Santiago were "the operational piece" of the company's management, but they did not have access to the business's financial information.  As the managing member he was in "[f]requent contact with [Vaughn], both [by] phone and in person," and "[i]ssues that [were] important [got] elevated  [to him] very quickly."  He had the final say on the language of forms and correspondence, though he was likely to get involved only when "made aware that there are issues that go beyond just the mere formalities or issues that need counsel involved."  But given what Routh perceived as the high-risk legal environment — in which "we need to be very careful on what is said and parse things very closely" in order to avoid litigation — he testified that "most changes [to collection forms] would either be touched on by me and reviewed by me or . . . more typically, I think, counsel."

In sum, Routh's involvement in the business, though usually distant, was that of a high-level manager with real decisional authority, not an absentee owner or

---

[95]  *See, e.g.*, *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1073 (E.D. Cal. 2008) ("[B]ecause the FDCPA imposes personal, not derivative, liability, serving as a shareholder, officer, or director of a debt collecting corporation is not, in itself, sufficient to hold an individual liable as a 'debt collector.' "); *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1109 (W.D. Wash. 2012) (following *Schwarm*).

shareholder whose only interest was financial. These undisputed facts are sufficient to establish that Routh is a person who "regularly collects or attempts to collect, directly or indirectly, debts owed . . . or due another"[96] and is therefore a "debt collector" for purposes of the FDCPA.[97]

This does not answer the second question identified in *Cruz* — whether Routh, as a debt collector, "has taken an action that violates the FDCPA."[98] The court in *Cruz* did not need to answer this question at length, since the individual under

---

[96] 15 U.S.C. § 1692a(6).

[97] We acknowledge that there is again a range of views on when individual owners, officers, or employees are "debt collectors" for purposes of the FDCPA. *Compare Pettit v. Retrieval Masters Credit Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("Because [officers and shareholders] do not become 'debt collectors' simply by working for or owning stock in debt collection companies, we held [in *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000),] that the Act does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced."), *with Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437-38 (6th Cir. 2008) (holding "that subjecting the sole member of an LLC to individual liability for violations of the FDCPA will require proof that the individual is a 'debt collector,' but does not require piercing of the corporate veil"); *see also Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 862 (D. Ariz. 1999) (holding that officers who "materially participated in the activities of [the company] alleged to be collection activities" may be "debt collectors under the statute"); *Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1336-37 (D. Utah 1997) ("[A]s the firm's sole attorney, developer of the 'covenant not to sue' practice, author of the generic letters utilized by the firm, and supervisor of all of the firm's collection activities, Mr. DeLoney was regularly engaged, directly and indirectly, in the collection of debts."). We agree with the view that an individual is or is not a "debt collector" under the Act based on his own level of involvement and his own activities, not those of the entity he owns or manages; the liability is not vicarious, nor does it depend on whether the corporate veil can be pierced.

[98] *Cruz*, 673 F.3d at 1000.

discussion "himself was personally involved in at least one violation of the FDCPA."[99] Here, the parties and the superior court did not address Routh's liability in terms of *Cruz*'s two-step analysis: their apparent assumption was that if Routh was a "debt collector" as defined in the Act, he was liable for the alleged violation. Many courts seem to follow a similar analysis. The superior court in this case cited *Del Campo v. American Corrective Counseling Service, Inc.*, which noted three measures other courts have used to determine whether individuals should be held liable: they "(1) materially participated in collecting a debt, (2) exercise[d] control over the affairs of [a debt collection] business, or (3) were regularly engaged, directly and indirectly, in the collection of debts."[100] The second and third of these tests seem to conflate the two questions of (1) whether the individual is a "debt collector" and, (2) if so, whether he violated the FDCPA. We therefore find it most helpful to frame the issue — whether the individual has "taken an action that violates the FDCPA" — in terms of whether the individual "materially participated" in the specific violation alleged.[101]

The violation at issue here is the debt collector's failure to include the full

---

[99]    *Id.*

[100]    *Del Campo v. Am. Corrective Counseling Serv., Inc.*, 718 F. Supp. 2d 1116, 1127 (N.D. Cal. 2010) (alterations in original) (footnotes omitted); *see also Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1109 (W.D. Wash. 2012) ("[C]ourts have found an individual personally liable if 'the individual 1) materially participated in collecting the debt at issue; 2) exercised control over the affairs of the business; 3) was personally involved in the collection of the debt at issue; or 4) was regularly engaged, directly or indirectly, in the collection of debts.' " (quoting *Schwarm*, 552 F. Supp. 2d at 1073)).

[101]    *See Del Campo v. Mealing*, No. C 01-21151 SI, 2013 WL 4764975, at *10-11 (N.D. Cal. Sept. 5, 2013) ("The Court concludes that under *Cruz*, plaintiffs must demonstrate that [the individual debt collector] materially participated not only in debt collection but also in the specific FDCPA violations alleged by plaintiffs.").

amount due in the initial communication to the debtor or within five days of it.[102]  The Act provides that it is the "debt collector" who "shall" provide this information.[103]  It is undisputed that this information was not provided.

But the undisputed facts show that Routh did not "materially participate" in creating the notices of default that the Ambridges allege were in violation of the FDCPA.  The superior court concluded, on Routh's undisputed testimony, that Routh "did not draft, review, approve or sign the Notice of Default" sent to the Ambridges.[104]  Routh testified that while "[t]he creation of forms and so forth might have my involvement," most foreclosure documents were drafted without it, including the form at issue here.  He testified that the notices of default could be changed without his approval unless he was made aware that there were issues that "go beyond just the mere formalities or [were] issues that need counsel involved."  Routh testified that Alaska Trustee did change its forms in response to the superior court's rulings on the violation alleged in this case; he testified further that while he was "aware of" the changes made, he did not make them himself, and that he later approved them based on the

---

[102]    15 U.S.C. § 1692g(a)(1) (2012) ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing . . . the amount of the debt . . . ."); *see Miller v. McCalla*, 214 F.3d 872, 875-76 (7th Cir. 2000) ("What [the defendants] certainly could do was to state the total amount due — interest and other charges as well as principal — on the date the dunning letter was sent.  We think the statute required this.").

[103]    15 U.S.C. § 1692g(a)(1).

[104]    *See Mealing*, 2013 WL 4764975, at *11 (stating that to establish liability for specific FDCPA violations, plaintiffs were required to show evidence that defendant "materially participated" in each violation, "such as, for example, that [defendant] played a material role in developing, approving or ratifying the contents and format of the communications in use . . . that plaintiffs allege violate the FDCPA" (citing *Musso v. Seiders*, 194 F.R.D. 43, 47 (D. Conn. 1999))).

recommendation of counsel. Routh also testified that any potential problem with the notices of default that Alaska Trustee served on the Ambridges never "crossed [his] radar" before the superior court's rulings.[105]

We conclude that these facts are insufficient to show that Routh materially participated in the specific violation of the FDCPA that the Ambridges are pursuing. Under the two-step inquiry of *Cruz*, Routh is a "debt collector" but is not individually liable for the violation. We therefore affirm in part, and reverse in part, the superior court's decision of this issue.

## C. The Superior Court Did Not Err In Awarding Injunctive Relief Under The UTPA.

The superior court held that the Ambridges were entitled to an injunction under the Unfair Trade Practices and Consumer Protection Act (UTPA), requiring that Alaska Trustee conform its notices of default to the requirements of 15 U.S.C. § 1692g(a)(1).[106] The court concluded that injunctive relief was authorized by AS 45.50.535(a), which provides that "any person who was the victim of [an] unlawful act, whether or not the person suffered actual damages, may bring an action to obtain an injunction prohibiting a seller or lessor from continuing to engage in an act or practice declared unlawful under AS 45.50.471." We affirm the superior court's decision of this issue.

---

[105]  *Cf. Musso*, 194 F.R.D. at 47 (denying motion to dismiss claims against "a stockholder and top executive" of a collection company where the plaintiff alleged "that he is personally liable as a debt collector because he knew of the allegedly unlawful procedures being used but nevertheless approved or ratified them").

[106]  Alaska Trustee had already changed its challenged practices before the superior court ruled on the Ambridges' request for an injunction. But "[v]oluntary cessation does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (citations omitted).

Alaska Trustee challenges the propriety of injunctive relief on three grounds.  First, it argues that an FDCPA violation is not necessarily a violation of the UTPA, because Alaska law would not consider unfair or deceptive every conceivable violation of the federal law.  Alaska Trustee contends that the Ambridges were not harmed or misled in any way by what in this case was at most a technical violation of the FDCPA, because the Ambridges knew that the notice of default included only the principal amount due (it was explicitly described as such) and they could not have paid it anyway.

We reject this argument.  Alaska Statute 45.50.471(a) declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  The legislature has directed that in interpreting these words we give "due consideration and great weight" to "the interpretations of 15 U.S.C. § 45(a)(1) [the Federal Trade Commission Act]."[107]  The words of Alaska's statute therefore "have a fixed meaning . . . which has emerged from agency and judicial interpretation of the identical words of the federal statute."[108]

We applied these principles in *State v. O'Neill Investigations, Inc.*, in which we held that the activities of independent debt collectors fall within the scope of the UTPA.[109]  We defined "unfairness" by reference to *F.T.C. v. Sperry & Hutchinson Co.*, in which the United States Supreme Court set out these factors for consideration:

> (1) whether the practice . . . offends public policy as it has been established by statutes . . . , in other words, it is within at least the penumbra of some common-law, statutory, or

---

[107]    AS 45.50.545.

[108]    *ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n*, 267 P.3d 1151, 1158 (Alaska 2011) (quoting *State v. O'Neill Investigations*, 609 P.2d 520, 532 (Alaska 1980)).

[109]    609 P.2d at 528.

-36-                                    **7084**

other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).[110]

To simplify matters here, the FDCPA expressly states that a violation of it "shall be deemed an unfair or deceptive act or practice in violation of [the Federal Trade Commission Act],"[111] the Act the legislature requires us to consider in interpreting AS 45.50.471.[112] Clearly, a violation of the FDCPA falls "within at least the penumbra of some . . . statutory . . . concept of unfairness," thus satisfying the first *Sperry* factor.[113] Under *O'Neill*, a violation of the FDCPA is inescapably an "unfair or deceptive act[] or practice[]" under AS 45.50.471(a).

Alaska Trustee's second argument is that holding the UTPA applicable to violations of the FDCPA that involve real property foreclosures conflicts with our line of cases holding that "goods or services" for purposes of the UTPA do not include real estate transactions.[114] We addressed this issue most recently in *Alaska Trustee, LLC v. Bachmeier*, in which we affirmed that "[f]or the past thirty years we have consistently

---

[110]   *Id.* at 535 (quoting *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)).

[111]   15 U.S.C. § 1692*l*(a) (2012).

[112]   AS 45.50.545.

[113]   All three *Sperry* factors are not necessary to a finding of unfairness. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser degree it meets all three." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (quoting Disclosure Requirements and Prohibitions Concerning Franchising & Business Opportunity Ventures, 43 Fed. Reg. 59,614, 59,635 (1978)).

[114]   *See Roberson v. Southwood Manor Assocs., LLC*, 249 P.3d 1059, 1061 (Alaska 2011); *Barber v. Nat'l Bank of Alaska*, 815 P.2d 857, 861 (Alaska 1991); *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 412-14 (Alaska 1982).

held that 'the sale of real property is not within the regulatory scope of the [UTPA].' "[115] At issue in *Bachmeier* were two statutory amendments, the most recent of which expanded the UTPA's definition of "goods or services" to include "goods or services provided in connection with . . . a transaction involving an indebtedness secured by the borrower's residence."[116] We concluded that the amendment "elaborated what *types* of goods and services are covered by the Act, but did not change the longstanding definition of goods and services itself — a definition that has never encompassed real property transactions."[117]

There was no FDCPA claim before us in *Bachmeier*.[118] The plaintiff's sole argument for coverage under the UTPA was based on the amendments to the definition of "goods or services," an argument we rejected.[119] The argument here is different: not that nonjudicial foreclosures are covered "goods or services," but that violations of the FDCPA in the course of nonjudicial foreclosures are "unfair or deceptive acts or practices" that are brought within the UTPA by *O'Neill* and the statutory command that we align our interpretation of the UTPA with federal interpretations of the Federal Trade Commission Act. There are different avenues to coverage under the UTPA, and a violation of the FDCPA is one of them.

---

[115] 332 P.3d 1, 5 (Alaska 2014) (quoting *First Nat'l Bank*, 660 P.2d at 414).

[116] *Id.* at 6-7 (quoting AS 45.50.561(a)(9)); *see also* ch. 55, § 9, SLA 2004.

[117] *Id.* at 7 (emphasis in original).

[118] *Bachmeier* arose out of a similar lawsuit against Alaska Trustee. *See id.* at 2-4. Although the plaintiff in *Bachmeier* alleged an FDCPA violation in the superior court, it was not at issue on appeal. *Id*. at 3-4 & 3 n.6.

[119] *Id.* at 6-7.

Finally, we turn to Alaska Trustee's argument that the UTPA's injunctive relief provision does not apply to it because it is not "a seller or lessor."[120] In support of this argument, Alaska Trustee contends that "[a] non-judicial foreclosure is unquestionably a service related to real property and is not a consumer service, as the person 'purchasing' the service is not a consumer, but generally a financial institution, mortgage servicer, or an individual who provided owner financing and for whom the foreclosure must be regarded as a business transaction." We have already explained that application of the UTPA in this case follows from the claimed violations of the FDCPA and does not depend on whether the service is related to real property. Nor did the legislature intend to limit the UTPA to "consumer" services, as our prior cases have repeatedly observed.[121] And the UTPA injunction provision does not require that the person seeking the remedy be a "consumer" of the service; it allows a claim by "any person who was the victim of the unlawful act."[122]

For these reasons, we conclude that the superior court did not err when it awarded injunctive relief to the Ambridges under AS 45.50.535(a).

V. **CONCLUSION**

We REVERSE the decision of the superior court holding Routh liable for the violation at issue. We otherwise AFFIRM the decisions of the superior court.

---

[120] AS 45.50.535(a) provides, in relevant part, that a person "may bring an action to obtain an injunction prohibiting *a seller or lessor* from continuing to engage in an act or practice declared unlawful under AS 45.50.471" (emphasis added).

[121] *See Donahue v. Ledgends, Inc.*, 331 P.3d 342, 353 (Alaska 2014) (noting that the UTPA was designed to protect both consumers and "honest businessmen from the depredations of those persons employing unfair or deceptive trade practices" (quoting *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1052 (Alaska 2004))).

[122] AS 45.50.535(a).

WINFREE, Justice, with whom STOWERS, Justice, joins, dissenting.

The primary issue in this appeal is whether a business that regularly — but *only* — acts as a trustee conducting non-judicial deed of trust foreclosures falls for all purposes under the Fair Debt Collection Practices Act's (FDCPA) "debt collector" definition.[1]   Because the court collapses the FDCPA's disparate usage of the terms "security interest" and "debt";[2] because one who merely enforces a security interest should not be subject to the entire FDCPA but only to its illegal dispossession subsection;[3] and because the Ambridges brought suit under a FDCPA section requiring an "initial communication . . . in connection with the collection of any debt"[4] before liability attaches, but a statutorily required notice of default under Alaska law is not such a communication, I dissent.

### I.     A Deed Of Trust Is A Security Instrument, Not A Debt.

A deed of trust is interdependent yet distinct from the debt it secures.[5]

---

[1]      15 U.S.C. §§ 1692-1692p (2012).

[2]      *See id.* § 1692a(6) (defining the term "debt collector").

[3]      *See id.* § 1692f(6).

[4]      *Id.* § 1692g(a).

[5]      *See Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 9-10 (Alaska 2014) (stating that trustors "signed a Promissory Note creating the obligation to repay their loan and a Deed of Trust giving the lender, through the trustee, the right to sell the property if they failed to repay the loan"); *accord Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 493-94 (Minn. 2009) ("Historically, promissory notes and security instruments have been treated as two distinct documents that are legally intertwined.  A real property mortgage has 'two things, the personal obligation and the interest in the realty securing that obligation.' " (citation omitted) (quoting 4 GEORGE E. OSBORNE, AMERICAN LAW OF PROPERTY § 16.107 (1952))); GRANT S. NELSON ET AL., REAL ESTATE TRANSFER, FINANCE, AND DEVELOPMENT 100 (8th ed. 2009) ("A mortgage involves a transfer by a debtor-mortgagor to a creditor-mortgagee of a real estate interest, to be held as security for the performance of an obligation, normally the payment of a

(continued...)

> The mortgage was created by the early English court as a transfer of title from the mortgagor to the mortgagee, generally as security for a loan by the mortgagee to the mortgagor. Once the mortgagor repaid the loan proceeds, title to the property would return to him. If, however, the mortgagor failed to pay the mortgage by the due date, called the law day, he would forfeit all interest in the property.[6]

Because of injustices surrounding law day forfeitures, a common law right of equitable redemption developed allowing a mortgagor to repay the loan after law day and thus regain title to property.[7] But the right of equitable redemption made title uncertain, and therefore the remedy of strict foreclosure arose: "If the mortgagor failed to redeem within [a certain time], the redemption right was forever barred and both legal and equitable title to the real estate vested in the mortgagee."[8]

From this emerged the concept that a mortgage — or as is commonly used in Alaska, a deed of trust[9] — should not be treated as a transfer of title but rather "as merely a security interest in the property" that " 'confers no right to possession of that real estate on the mortgagee' . . . . 'until there has been a valid foreclosure.' "[10] In short,

---

**5**(...continued)
debt evidenced by a promissory note.").

**6** *Young v. Embley*, 143 P.3d 936, 940 (Alaska 2006) (footnote omitted) (citing 1 GRANT S. NELSON & DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 1.2, at 6-7 (4th ed. 2002)).

**7** *See id.*

**8** RESTATEMENT (THIRD) OF PROP.: MORTGS. § 3.1 cmt. a (1997).

**9** For the most part Alaska law does not differentiate between deeds of trust and mortgages because both " 'accomplish[] the same purpose[] [of] creating a security interest in land.' " *Young*, 143 P.3d at 941-42 (quoting *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks*, 478 P.2d 829, 831 (Alaska 1970)).

**10** *Id.* at 940 (quoting RESTATEMENT (THIRD) OF PROP.: MORTGS. § 4.1(a)
(continued...)

non-judicial foreclosure — the process through which a security interest in property is enforced[11] — does not in and of itself collect a debt, but rather " 'calls for the vesting and divesting of title to real property' " according to the parties' prior agreement.[12]

Against this historical backdrop the FDCPA defines the term "debt collector" differently depending on whether a debt or a security interest is at issue. Relevant here, a "debt collector" is:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . *For the purpose of section 1692f(6)* of this title,[13] such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business *the principal*

---

[10](...continued)
(1997); NELSON & WHITMAN, *supra* note 6, § 1.5, at 10).

[11]    *See generally* AS 34.20.070.

[12]    *See Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 321 (D. Conn. 2012) (quoting *City of New Haven v. God's Corner Church, Inc.*, 948 A.2d 1035, 1040 (Conn. App. 2008)); *see also* AS 34.20.070(a) (permitting non-judicial foreclosure sale if deed of trust "provides that in the case of default . . . trustee may sell the property for condition broken"); AS 34.20.090(a) (stating non-judicial foreclosure sale "transfers all title and interest that the party executing the deed of trust had in the property").

[13]    Under 15 U.S.C. § 1692f(6) a security interest enforcer incurs liability only by:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest; . . . there is no present intention to take possession of the property; or . . . the property is exempt by law from such dispossession or disablement.

*purpose of which is the enforcement of security interests*.[14]

The FDCPA defines "debt" in terms of money and does not mention security interests; a "debt" is "any obligation . . . of a consumer to pay *money*."[15] The court states that this definition "plainly encompasses a home mortgage." But a security instrument is itself not an obligation to pay money; rather the obligation to pay money is created by the underlying loan agreement. A mortgage secures payment of a mortgagor's separate debt — without a separate debt or other obligation to secure, a mortgage has little effect — and a non-judicial foreclosure operates only to shift title from the mortgagor to the foreclosure sale purchaser.[16] And nothing in the FDCPA's definition suggests that a mortgage is somehow converted into a debt through the non-judicial foreclosure process.

In construing the term "debt collector," courts have recognized that "if the enforcement of a security interest was synonymous with debt collection," then the definitional sentence referencing security interests "would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts."[17] This result is avoided if security interest

---

[14] *Id.* § 1692a(6) (emphases added).

[15] *See id.* § 1692a(5) (emphasis added).

[16] *See supra* note 12 and accompanying text; *see also* AS 34.20.100 (prohibiting an "action[,] . . . proceeding[,] . . . [or] judgment . . . on the obligation secured by the deed of trust" after a non-judicial foreclosure sale).

[17] *E.g.*, *Gray v. Four Oak Court Ass'n*, 580 F. Supp. 2d 883, 888 (D. Minn. 2008); *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-cv-03646 JSC, 2013 WL 2299601, at *6 (N.D. Cal. May 24, 2013); *see also Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460-61 (11th Cir. 2009) (per curiam) ("[T]he statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6), which reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act."); *Dunavant v. Sirote & Permutt,*
(continued...)

enforcers are not subject to liability under the entire FDCPA but instead held liable only for violations of the illegal dispossession subsection, § 1692f(6).

## II. Congress Did Not Intend The FDCPA To Impose Liability On Entities Only Pursuing Non-Judicial Deed Of Trust Foreclosures.

Congress passed the FDCPA in 1977 in response to "the use of abusive, deceptive, and unfair debt collection practices"[18] such as: "threats of violence; obscene language; the publishing of 'shame lists[';] harassing or anonymous telephone calls; impersonating a government official or attorney; misrepresenting the consumer's legal rights; simulating court process; obtaining information under false pretenses; collecting more than is legally owing; and misusing postdated checks."[19] Given the FDCPA's legislative history, it is more than questionable whether "[p]rosecuting a state foreclosure action is . . . the type of abusive collecti[on] practice[] that the FDCPA is aimed at eliminating."[20]

Indeed, "the purposes of the FDCPA would [not] be furthered by applying [it] to state foreclosure proceedings considering the panoply of protections and

---

[17](...continued)
*P.C.*, 603 F. App'x 737, 739-40 & n.2 (11th Cir. 2015) (per curiam) (clarifying that *Warren* remains good law).

[18]    15 U.S.C. § 1692(a); Fair Debt Collection Practices Act, Pub. L. No. 95-109, 91 Stat. 874 (1977).

[19]    S. REP. NO. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1698; *see also* 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."); 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.").

[20]    *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 328 (D. Conn. 2012).

safeguards available to parties of a foreclosure action under [state] law."[21]  In Alaska a trustor may invoke the personal defenses of fraud and misrepresentation to invalidate a foreclosure sale;[22] a foreclosure sale contract may be modified based on mutual mistake;[23] procedural or substantive inequities surrounding the foreclosure process may invalidate the sale;[24] a trustee may not act inimically to a trustor's interests;[25] a trustor by statute can "bring an action . . . to enjoin a foreclosure";[26] and a trustor can twice prevent a foreclosure sale by paying the arrearages before the trustee "may elect to refuse payment and continue the sale."[27]

As one district court reasoned:

[The] statutes require the trustee to record a notice of default as the first step in a non-judicial foreclosure proceeding.  The notice must contain a statement that a breach of an obligation has occurred and set forth the nature of the breach.  The intent behind the FDCPA was to prohibit abusive collections practices, not to outlaw foreclosures when there is an express

---

[21]      *Id.* at 327.

[22]      *See Bauman v. Day*, 892 P.2d 817, 823-24 (Alaska 1995) ("We see no reason why the personal defenses of an owner cannot result in invalidating a non-judicial sale just as they can result in invalidating the obligation on which the sale was based.").

[23]      *See Fireman's Fund Mortg. Corp. v. Allstate Ins. Co.*, 838 P.2d 790, 797 (Alaska 1992).

[24]      *See Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.*, 116 P.3d 592, 596 (Alaska 2005) (noting that procedurally "unfair and unreasonable" non-judicial foreclosure sales may be set aside); *Baskurt v. Beal*, 101 P.3d 1041, 1044, 1046 (Alaska 2004).

[25]      *See Baskurt*, 101 P.3d at 1046 (noting that the trustee has "the duty to take reasonable and appropriate steps to avoid sacrifice of the debtor's property and interest").

[26]      AS 34.20.070(*l*)(1).

[27]      AS 34.20.070(b).

security agreement and breach of an obligation.[28]

The evils the FDCPA was meant to remedy are not implicated during a non-judicial deed of trust foreclosure sale that fully complies with Alaska law. On the other hand, overlaying the FDCPA on a state's statutory non-judicial deed of trust foreclosure system by making deed of trust trustees — such as title companies — "debt collectors" will wreak havoc. For example, the FDCPA bars a debt collector from contacting a consumer with respect to a debt if the consumer has asked the debt collector to stop[29] and bars a debt collector from continuing collection of a disputed debt until the debt is verified.[30] This will grind non-judicial deed of trust foreclosures to a halt, lead to missed statutory deadlines, missed statutory notices to debtors and third-parties, and necessitate re-starts of the process.[31]

### III. The Assertion That Non-Judicial Deed Of Trust Foreclosures Are Debt Collection Under The FDCPA Is Unpersuasive.

The court's reliance on *Glazer v. Chase Home Finance LLC*[32] is misplaced. The court notes that *Glazer* held that all real estate foreclosure activities constitute debt collection, in part because the FDCPA requires all debt collectors to "bring[] any legal

---

[28] *Maynard v. Cannon*, 650 F. Supp. 2d 1138, 1143-44 (D. Utah 2008) (citations omitted), *aff'd*, 401 F. App'x 389 (10th Cir. 2010); *see also Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1239 (10th Cir. 2013) (" '[W]hen a debt has yet to be reduced to a personal judgment against a mortgagor, a non-judicial foreclosure does not result in a mortgagor's obligation to *pay money* — it merely results in the sale of property subject to a deed of trust.' " (emphasis in original) (quoting *Maynard*, 401 F. App'x at 394)).

[29] 15 U.S.C. § 1692c(c).

[30] *Id.* § 1692g(b).

[31] *Cf.* AS 34.20.070-.080 (providing state procedures for notification of default and conducting sale for non-judicial deed of trust foreclosures).

[32] 704 F.3d 453 (6th Cir. 2013).

action . . . to enforce an interest in real property . . . in a judicial district . . . in which such real property is located."[33] But in Alaska — and in other states with similar laws — a *judicial* foreclosure proceeding is required for a mortgagee to seek a deficiency judgment.[34] The FDCPA clearly regulates a debt collector seeking to collect money under a judicial foreclosure deficiency judgment,[35] but a non-judicial deed of trust foreclosure in Alaska — and in other states with similar laws — cannot result in a deficiency judgment.[36]

---

[33]    15 U.S.C. § 1692i(a)(1); *see Glazer*, 704 F.3d at 461-62.

[34]    *See* AS 09.45.170; AS 09.45.180; AS 34.20.100; *Kuretich v. Alaska Tr., LLC*, 287 P.3d 87, 91 (Alaska 2012) (explaining that after judicial foreclosure sale, "the lender can obtain a deficiency judgment against the borrower for amounts still owed"); *see also, e.g.*, *Wash. Fed. v. Harvey*, 340 P.3d 846, 847 n.1 (Wash. 2015) (explaining that in non-judicial foreclosures borrowers surrender their rights to redemption "in exchange for protection from deficiency judgments" available in judicial foreclosures); *Garretson v. Post*, 68 Cal. Rptr. 3d 230, 235 (Cal. App. 2007) (explaining deficiency judgments are available in judicial foreclosures but not in non-judicial foreclosures).

The court's reliance on *Dworkin v. First National Bank of Fairbanks*, 444 P.2d 777 (Alaska 1968), is equally misplaced. That case involved a judicial action to enforce an alleged equitable mortgage when no legal mortgage existed and the specific question whether, for a judicial action, a security interest could survive beyond the statute of limitations for the underlying debt. *Id.* at 780-82.

[35]    *See Doughty v. Holder*, Nos. 2:13-cv-00295-LRS to 00297-LRS, 2014 WL 220832, at *5 (E.D. Wash. Jan. 21, 2014) ("[A] deficiency judgment . . . is not for the purpose of enforcing the security interest, but for seeking payment of funds to make up a shortfall between the proceeds obtained from the foreclosure sale and the amount of the foreclosure judgment. It is an action to collect a debt.").

[36]    *See* AS 34.20.100 (prohibiting a deficiency "action[,] . . . proceeding[,] . . . [or] judgment . . . on the obligation secured by the deed of trust" after a non-judicial foreclosure sale); *see also, e.g.*, CAL. CIV. PROC. CODE § 580d (West 2015); WASH. REV. CODE ANN. § 61.24.100 (West 2015); *see also* 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation . . . to pay money").

And in Alaska and many other jurisdictions permitting non-judicial deed of trust foreclosures, no legal action of any kind is required; rather, the trustee must only notify interested parties, including the trustor, of the default.[37]  Therefore a deed of trust trustee, like Alaska Trustee, conducting only *non-judicial* deed of trust foreclosures not permitting deficiency judgments, cannot be brought within the FDCPA's general debt collector definition simply because one provision restricts where *judicial* foreclosure actions permitting deficiency judgments may be brought.  Only the illegal dispossession subsection explicitly regulating "nonjudicial action"[38] should apply to Alaska Trustee.

After conflating the FDCPA's distinction between a debt and a security interest, the *Glazer* court had to explain to whom the illegal dispossession subsection[39] was intended to apply, and it concluded that because "repossession agencies and their agents" only enforce security interests, this subsection was meant to apply exclusively to them.[40]  But this logic hinges on the faulty premise that non-judicially enforcing a security interest in personal property is meaningfully different from non-judicially enforcing a security interest in real property.  It is not.  As with non-judicial deed of trust foreclosures, Uniform Commercial Code repossessions under Article Nine allow secured

---

[37]     *See* AS 34.20.070; 2 BAXTER DUNAWAY, THE LAW OF DISTRESSED REAL ESTATE § 17.4 (2015) ("State [non-judicial foreclosure] statutes specify notice requirements, such as recording, posting on the property, mailing of notice to the borrower and other specified parties, and advertisement in newspapers."); 1 *id.* app. 13A (listing 29 states where non-judicial foreclosure with varying notice requirements is "normal" foreclosure method); REAL ESTATE TRANSFER, FINANCE, AND DEVELOPMENT, *supra* note 5, at 641-43 (quoting GRANT S. NELSON ET AL., REAL ESTATE FINANCE LAW 633-36 (5th ed. 2007)) (explaining that roughly 60% of jurisdictions allow power of sale or non-judicial foreclosures "[a]fter varying types and degrees of notice").

[38]     15 U.S.C. § 1692f(6).

[39]     *Id.*

[40]     704 F.3d 453, 463-64 (6th Cir. 2013).

parties[41] to offset their losses on underlying debt by retaining or selling pledged collateral.[42] Without otherwise collecting or even attempting to collect a single cent from the debtor, both lenders holding a deed of trust and lenders holding a security interest in personal property may, upon default, divest the debtor of title to the collateral property simply by virtue of their security interests.[43] Enforcing a security interest without otherwise collecting on the underlying debt does not transform the enforcer of the security interest — whether in personal property or real property — into a debt collector subject to the prohibitions of the entire FDCPA; rather, the security interest enforcer incurs liability only by violating the illegal dispossession subsection.

The *Glazer* court posited that the illegal dispossession subsection was intended to apply to personal property repossession agencies, and the court adopts *Glazer*'s logic, agreeing that such entities "may well have no regular practice of

---

[41]     *See* U.C.C. § 9-102(a)(73) (2010); *accord* AS 45.29.102(a)(91)(A) (defining "secured party" in part as "a person in whose favor a security interest is created or provided for under a security agreement").

[42]     *See* U.C.C. §§ 9-609, 9-610; *accord* AS 45.29.609(a)(1) ("After default, a secured party . . . may take possession of the collateral . . . ."); AS 45.29.610(a) ("After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral . . . .").

[43]     *See* AS 34.20.080(b) (permitting "beneficiary" — the entity with "the ultimate right to be repaid on the loan," *Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 5 n.4 (Alaska 2014) — to bid at a non-judicial foreclosure sale); U.C.C. § 9-610(c); *see also* AS 45.29.610(c) (permitting secured party to bid on collateral at post-default sale); U.C.C. § 9-620(a)-(c) & cmt. 3; U.C.C. § 9-609(b)(2); AS 45.29.620(a)-(c) (permitting secured party to accept collateral in full satisfaction of debt upon notice to other parties with interest in collateral and if debtor consents, either explicitly or by failing to timely respond to a proposal to accept collateral, but requiring that consumer goods not be "in the possession of the debtor when the debtor consents to the acceptance"); AS 45.29.609(b)(2) (permitting secured party to non-judicially repossess collateral upon default "if it proceeds without breach of the peace").

communicating with debtors" of the type the FDCPA prohibits.[44] But in two cases the *Glazer* court cited to support this proposition, the debtor was contacted, sometimes repeatedly.[45] And the illegal dispossession subsection prohibits not only "[t]aking" but also "*threatening* to take any nonjudicial action,"[46] which presumably entails some form of communication. Assumed levels of communication between debtors and security interest enforcers are therefore not a reliable justification for applying the illegal dispossession subsection to personal property repossession agencies but not to non-judicial deed of trust foreclosure companies like Alaska Trustee.

In short, *Glazer*'s logic does not support treating every security interest enforcer as a debt collector. If Congress meant for "any business the principal purpose of which is *the collection of any debts*" to mean exactly the same thing as "any business the principal purpose of which is the *enforcement of security interests*,"[47] then it would not have used these two *different* phrases in defining "debt collector" while also creating the illegal dispossession subsection *only* for security interest enforcers.[48] The court's

---

[44]    *See also* 704 F.3d at 463-64.

[45]    In *Jordan v. Kent Recovery Services, Inc.* the repossession agent visited the debtor's home and communicated with her no less than five times in an attempt to locate the car. 731 F. Supp. 652, 654-55 (D. Del. 1990), *cited by Glazer*, 704 F.3d at 464. And in *James v. Ford Motor Credit Co.* "Ford Credit notified the Jameses of their default and told them that they planned to repossess the Escort. Ms. James told Ford Credit that she did not want her car repossessed and that Ford Credit could not take it." 47 F.3d 961, 962 (8th Cir. 1995), *cited by Glazer*, 704 F.3d at 464.

[46]    15 U.S.C. § 1692f(6) (emphasis added).

[47]    *Id.* § 1692a(6) (emphases added).

[48]    *See id.* (stating that "[f]or the purpose of" the illegal dispossession subsection, the term debt collector "also includes" security interest enforcers); *see also Jordan*, 731 F. Supp. at 657-58 (concluding that security interest enforcers incur liability only under the illegal dispossession subsection because " 'where Congress includes
(continued...)

reliance on *Glazer* is therefore misplaced.

Finally, the court asserts that recent case law from the Eleventh Circuit Court of Appeals supports imposing FDCPA liability on Alaska Trustee. But in *Reese v. Ellis, Painter, Ratterree & Adams, LLP* the Eleventh Circuit imposed FDCPA liability on a law firm initiating a non-judicial foreclosure sale when, although Georgia law required that a notice of foreclosure be sent to the mortgagor but did "not require a demand for payment of the debt[,] . . . the law firm included one anyway."[49] That is not the case here. The *Reese* court explicitly refused to decide the question that this case presents: "whether a party enforcing a security interest without demanding payment on the underlying debt is attempting to collect a debt" under the FDCPA,[50] and Eleventh Circuit district courts continue to answer this question in the negative.[51]

---

[48](...continued) particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

[49] 678 F.3d 1211, 1217 (11th Cir. 2012).

[50] *Id.* at 1218 n.3. The Consumer Financial Protection Bureau brief on which the court also relies similarly states: "The Court need not decide in this case whether foreclosure *by itself* constitutes debt collection activity covered by the Act." Brief of the Consumer Financial Protection Bureau as *Amicus Curiae* in Support of Plaintiffs-Appellants and Reversal at 32, *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579 (11th Cir. 2012) (No. 11-13574) (emphasis added), *available at* http://consumerfinance.gov/f/201112_CFPB_ Birster-amicus-brief.pdf.

[51] *See, e.g.*, *Beepot v. J.P. Morgan Chase Nat'l Corporate Servs.*, 57 F. Supp. 3d 1358, 1376 (M.D. Fla. 2014) (dismissing FDCPA claim "[b]ecause foreclosing on a security interest is not debt collection activity under the provisions of the FDCPA" (citing *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460-61 (11th Cir. 2009))); *Freire v. Aldridge Connors, LLP*, 994 F. Supp. 2d 1284, 1287-88 (S.D. Fla. 2014) ("[I]n the Eleventh Circuit, the filing of a mortgage foreclosure action will

(continued...)

-51- **7084**

**IV. The Notice Of Default Required By Alaska Statute Is Not A "Communication" Under The FDCPA.**

The only FDCPA provision under which the Ambridges brought suit, 15 U.S.C. § 1692g(a), requires in relevant part that a debt collector's initial communication with the debtor state "the amount of the debt" or that the debt collector inform the debtor of this amount "[w]ithin five days after the initial communication." Under the Alaska law relevant here, trustees must send notices of default to trustors before holding non-judicial foreclosure sales, and the notices must state: "that a breach of the obligation for which the deed of trust is security has occurred"; "the nature of the breach"; "the sum owing on the obligation"; and that the trustee has elected "to sell the property to satisfy the obligation."[52] In August 2009 Alaska Trustee sent the Ambridges such a notice, and a few weeks later Alaska Trustee sent them an amended notice containing the same information. Aside from these two statutorily required notices of default that did not attempt to collect money, Alaska Trustee did not further communicate with the Ambridges about the foreclosure, and it never sent them a reinstatement letter requesting money to bring their loan current and prevent foreclosure.

On these facts, had Alaska Trustee instead initiated a judicial foreclosure and served the Ambridges with a complaint, its non-liability under the FDCPA would not be debatable: "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of [§ 1692g(a)]."[53] It is no

---

[51](...continued)
constitute debt collection activity only when the complaint seeks also to collect on the note . . . ." (citing *Reese*, 678 F.3d at 1217)).

[52]    Former AS 34.20.070(b)(4)-(7), (c) (2003).

[53]    15 U.S.C. § 1692g(d); *see Wood v. Lerner Sampson & Rothfuss*, No. 1:13CV1669, 2014 WL 4249785, at *6 (N.D. Ohio Aug. 27, 2014) ("Plaintiff's citation to *Glazer* . . . for the proposition that 'mortgage foreclosure is debt collection under the
(continued...)

different in the non-judicial foreclosure process — according to the Federal Trade Commission (FTC) the term communication "does not include a notice that is required by law as a prerequisite to enforcing a contractual obligation between creditor and debtor, by judicial or *nonjudicial* legal process."[54] It is an unfair debt collection practice to represent or imply "that nonpayment of any debt will result in the . . . sale of any property . . . of any person *unless such action is lawful* and the debt collector . . . intends to take such action,"[55] but in Alaska non-judicial deed of trust foreclosure sales are

---

[53](...continued)
Act[,]' is unavailing for purposes of the § 1692g(a) claim. . . . [Section 1692g(d)] is perfectly clear that a legal pleading[, such as a foreclosure complaint,] is *not* an 'initial communication.' " (first alteration and emphasis in original) (citation omitted) (quoting *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 455 (6th Cir. 2013))).

[54]        *See* Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097-02, 50,101 (Dec. 13, 1988) [hereinafter FTC Staff Commentary] (emphasis added); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (noting that the FTC's interpretations of the FDCPA can help "shed light on the statute's meaning"); *Dietz v. Quality Loan Serv. Corp. of Wash.*, No. C13-5948 RJB, 2014 WL 5343774, at *2 (W.D. Wash. Oct. 20, 2014) ("The Notice of Default and Notice of Sale(s) are statutorily required notices under [state law]. They are not 'debt collection' activities separate from the non judicial process."); *Fouché v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 787-88 (S.D. Miss. 2008) (stating notice that is "necessary to foreclose under the deed of trust" with purpose of "satisfy[ing] conditions precedent to a foreclosure on the mortgage" subjected law firm to liability only under illegal dispossession subsection).

        The court relies on the Consumer Finance Protection Bureau's recent amicus position to the contrary in a pending Ninth Circuit Court of Appeals case. The Bureau came into existence in 2010, after all of the events in this case took place. It apparently supplants the FTC as the "official" FDCPA agency, but has not yet promulgated any formal interpretations. It remains to be seen how the Bureau's amicus position will be treated by the Ninth Circuit panel.

[55]        15 U.S.C. § 1692e(4) (emphasis added).

lawful.[56] It also is an unfair debt collection practice to advertise "for sale any debt to coerce payment of the debt,"[57] but the FTC commentary states that this provision is not violated "by providing public notices that are required by law as a prerequisite to enforcement of a security interest in connection with a debt."[58]

Although the FDCPA was intended "to eliminate abusive debt collection practices," it also was intended "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."[59] Alaska Trustee complied with Alaska non-judicial foreclosure law,[60] but the court nonetheless wrongfully penalizes Alaska Trustee by affirming the superior court's FDCPA damages award to the Ambridges.

## V.   Conclusion

Other courts repeatedly have refused to conflate the FDCPA's distinction between security interest enforcers — to whom only the illegal dispossession subsection

---

[56]    *See* AS 34.20.070.

[57]    15 U.S.C. § 1692d(4).

[58]    FTC Staff Commentary, 53 Fed. Reg. at 50,105; *see also* AS 34.20.070(b) (requiring that notices of default be recorded); AS 34.20.080(a)(2) (requiring public notice before non-judicial foreclosure sale).

[59]    15 U.S.C. § 1692(e); *see also id.* § 1692n ("This subchapter does not annul, alter, or affect, or exempt any person subject to [its] provisions . . . from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.").

[60]    As the court recognizes, it would be unfair to penalize Alaska Trustee for including FDCPA disclaimer language in its notices of default; the law in this area is far from clear, and Alaska Trustee asserted it was simply acting "out of an abundance of caution." *See Golliday v. Chase Home Fin., LLC*, 761 F. Supp. 2d 629, 636 (W.D. Mich. 2011) (noting security interest enforcers are debt collectors "for the narrow purposes of [the illegal dispossession subsection]" and therefore should not be faulted for including FDCPA disclaimer language in letters to mortgagors).

applies[61] — and debt collectors, to whom the prohibitions of the entire FDCPA apply.[62] In respecting this distinction, these courts have not hesitated to subject security interest enforcers to liability under the entire FDCPA if they attempt to collect money in addition to foreclosing on security interests.[63] In my view this is the correct FDCPA analysis, and applying it here can lead only to the conclusion that under the facts of this case, Alaska

---

[61] 15 U.S.C. § 1692f(6).

[62] *See, e.g., Boyd v. J.E. Robert Co.*, No. 05-CV-2455(KAM)(RER), 2013 WL 5436969, at *9-12 (E.D.N.Y. Sept. 27, 2013), (declining to follow *Glazer* because it "overlooks [a] basic statutory distinction" "between the 'collection of any debts' and 'the enforcement of security interests' " (quoting 15 U.S.C. § 1692a(6))); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 323-26 (D. Conn. 2012); *Gray v. Four Oak Court Ass'n*, 580 F. Supp. 2d 883, 887-88 (D. Minn. 2008).

[63] *See, e.g., Goodin v. Bank of Am., N.A.*, No. 3:13-cv-102-J-32JRK, 2015 WL 3866872, at *7 (M.D. Fla. June 23, 2015) ("As the foreclosure complaint sought to collect on the note and the security interest, it constituted debt collection activity and a violation of the FDCPA."); *Doughty v. Holder*, Nos. 2:13-cv-00295-LRS to 00297-LRS, 2014 WL 220832, at *3, 6 (E.D. Wash. Jan. 21, 2014) (holding that "[s]o long as the foreclosure proceedings, be they non-judicial or judicial, involve no more than mere enforcement of security interests," only the illegal dispossession subsection applies). *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-cv-03646 JSC, 2013 WL 2299601, at *8 (N.D. Cal. May 24, 2013) ("[P]ersons who regularly or principally engage in communications with debtors concerning their default that go beyond the statutorily mandated communications required for [non-judicial] foreclosure may be considered debt collectors."); *Calvert v. Alessi & Koenig, LLC*, Nos. 2:11-CV-00333, 00411, 00442, & 01004-LRH-PAL, 2013 WL 592906, at *4 (D. Nev. Feb. 12, 2013) (holding letters sent to debtor that were not part of Nevada's statutory "lien enforcement process" were "part of the debt collection process subject to the full battery of FDCPA provisions," whereas other letter required by statute was "subject to the lighter regulation of FDCPA section 1692f(6)"); *Beadle v. Haughey*, No. Civ.04-272-SM, 2005 WL 300060, at *3-4 (D.N.H. Feb. 9, 2005) ("Because defendants were executing a non-judicial foreclosure proceeding rather than collecting a debt, their activities are . . . subject [only to the illegal dispossession subsection].").

Trustee is not a debt collector subject to the entire FDCPA.[64]  I therefore dissent.

---

[64]     Accordingly, I do not address Stephen Routh's personal liability under the FDCPA or the superior court's injunction under the UTPA.